John Brosnan
3321 Vincent Road
Pleasant Hill, CA 94523
510.779.1006 : Tel
925.237.8300 : Fax

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BROSNAN, | CASE NUMBER : CV 07-6438 EDL |
| Plaintiff, | JOHN BROSNAN'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT AND TO STRIKE PUNITIVE DAMAGES |
| v. | |
| TRACY AVILDSEN aka TRACY BROOKS SWOPE, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY INCORPORATED AND DOES 1 - 233, | DATE:      MAY 27, 2008 TIME:      9:00 AM ROOM:      E |
| Defendants. | |

## INTRODUCTION

1.      This action stems from a simple rear-ending accident ("ACCIDENT") caused by Tracy Avildsen ("AVILDSEN") when she struck the rear of a vehicle driven by John Brosnan ("BROSNAN") with her own vehicle.  Three people witnessed the ACCIDENT.  When BROSNAN contacted AVILDSEN at the ACCIDENT she refused to provide her insurance information card or vehicle registration information as required by California Law.  AVILDSEN informed BROSNAN that State Farm Insurance ("SFI") was her insurer.  When BROSNAN informed AVILDSEN that he was contacting the Los Angeles Police Department ("LAPD") due to her refusal to provide her insurance card or registration information she ran back to her vehicle and drove off.  When BROSNAN contacted AVILDSEN'S claimed insurance company SFI, BROSNAN was told that AVILDSEN was not insured with SFI.  At a later date, BROSNAN was informed that SFI was handling liability for the claim.  BROSNAN believes that AVILDSEN was added to the SFI policy subsequent to the ACCIDENT.

## FACTS

2.    Dennis B. Kass ("KASS"), an attorney hired by SFI who holds the best interest of SFI above that of AVILDSEN represents AVILDSEN.

3.    SFI has provided information from SFI'S files to KASS in order for him to defend SFI and AVILDSEN.  As such, KASS is fully aware of what is in the SFI files.  Furthermore, KASS has communicated with AVILDSEN regarding this action and her involvement in it.

4.    SFI wants this action to be dismissed in order to avoid having their violations of BROSNAN'S rights under California Law from becoming public.

5.    SFI has directed KASS to use whatever means needed, including perjury or the subornation of perjury, to make this action go away.

6.    KASS has suborned perjury from AVILDSEN.

7.    On April 4, 2008, AVILDSEN signed a declaration wherein she declared under penalty of perjury that she's been a resident of California since approximately 1987 [Exhibit 1].

8.    SFI assigned a Special Investigator, Sandra Depena ("DEPENA"), handle the ACCIDENT investigation.  DEPENA violated BROSNAN'S rights pursuant to the California Fair Claims Settlement Regulations.

9.    BROSNAN is a claimant as defined by California Code of Regulations § 2695.2(c) which states:

> (c) "Claimant" means a first or third party claimant as defined in these regulations, any person who asserts a right of recovery under a surety bond, an attorney, any person authorized by operation of law to represent the claimant, or any of the following persons properly designated by the claimant in the manner specified in subsection 2695.5(c): an insurance adjuster, a public adjuster, or any member of the claimant's family.

10.    BROSNAN asked questions of DEPENA that required a response pursuant to California Code of Regulations § 2695(b) which states:

> Upon receiving any communication from a claimant, regarding a claim, that reasonably suggests that a response is expected, every licensee shall immediately, but in no event more than fifteen (15) calendar days after receipt of that communication, furnish the claimant with a complete response based on the facts

as then known by the licensee. This subsection shall not apply to require communication with a claimant subsequent to receipt by the licensee of a notice of legal action by that claimant.

11.     On or about June 8, 2007, DEPENA, submitted a Suspected Fraudulent Claim Referral Form ("FORM") to the California Department of Insurance regarding the ACCIDENT [Exhibit 2].  On the FORM, DEPENA entered the address for AVILDSEN.  The address DEPENA entered, as the address for AVILDSEN is 535 5TH AVE 21, New York, New York.

12.     BROSNAN maintains a mailing address in Pleasant Hill, CA and has done so for many years in order to facilitate the receiving of mail and packages.  BROSNAN does this due to the fact that BROSNAN prefers a nomadic lifestyle and that if he were to try to change his address for mailing purposes every time he moved he wouldn't get his mail.

13.     BROSNAN has never claimed to live at his mailing address.

14.     BROSNAN does do business in Northern California as pointed out by defendants and is being damaged in Northern California by DEFENDANTS illegal actions.

15.     DEFENDANTS in their Exhibit D falsely claim that BROSNAN owns a house in Hercules, CA.  DEFENDANTS have intentionally attempted to deceive the court by using outdated information from 2003.

16.     DEFENDANTS falsely make a claim regarding actions brought in Contra Costa County in prior to 2004 as a basis for claiming that BROSNAN lives in Contra Costa County.

17.     DEFENDANTS are trying to deceive the court with outdated and non-relevant information in order to waste this Court's time and BROSNAN'S time.

18.     This court does have subject matter jurisdiction over this action due to the fact that AVILDSEN is a resident of New York as proven by the FORM [Exhibit 2] filed by SFI with the California Department of Insurance.

19.     The venue is proper pursuant to Federal Rule of Civil Procedure 12(b)(3)(2) which states venue is proper in a district in which a substantial part of the events or omissions on which the claim is based occurred.  The ACCIDENT and contact with AVILDSEN lasted for but a few minutes.  The violations of BROSNAN'S rights pursuant to California's Fair Claims Settlement Regulations have spanned months.  Those violations occurred in the area covered by this Court.

20.     Federal Rule of Civil Procedure 12(b)(3)(2) is the proper venue because as DEFENDANTS pointed out in their own motion, BROSNAN works within the jurisdiction of

1  the Northern District Court.  Due to DEFENDANTS refusal to comply with California Law

2  BROSNAN continues to be damaged in the area covered by the Northern District Court.

3      21.    SFI claims that BROSNAN may not bring an action against SFI and SFI cites the

4  case of McKee v. Nat'l Union Fire Ins. Co., 15 Cal App. 4th 282, 287 (1993) [Exhibit 3]

5  ("MCKEE").  Nowhere in the case cited by DEFENDANTS does the court allow an insurance

6  company to violate California's Fair Claims Settlement Regulations.  In MCKEE the court is

7  concerning itself with one issue.

9          Whether a judgment creditor may sue a judgment debtor's insurance company

10         under subdivision (b)(2) of section 11580 of the Insurance Code before an appeal

11         from the judgment in the underlying action is resolved or the time within which to

12         pursue an appeal has passed.

14     22.    The action being brought by BROSNAN against SFI has to do with SFI violating

15  BROSNAN'S rights pursuant to California's Fair Claims Settlement Regulations.  SFI feels it

16  has the right to break the law with impunity and violate BROSNAN'S rights.  What is most

17  telling is that SFI in its motion never denied it owes a duty to BROSNAN to comply with

18  California's Fair Claims Settlement Regulations.

19     23.    If one were to use the logic, which is being promoted on the part of KASS for

20  SFI, then SFI is free to steal evidence against SFI belonging to BROSNAN and BROSNAN

21  can't sue SFI for the theft of his property.  BROSNAN does not believe that SFI has the right to

22  steal property from BROSNAN or to violate any other right of BROSNAN.

23     24.    It was the intent of the California Legislature to protect the public from the

24  predations of companies like SFI when it enacted the Fair Claims Settlement Regulations.  It's in

25  the best interest of the public that SFI be forced to comply with law.

26     25.    SFI asks that the claim for conspiracy to commit slander to be dismissed because

27  there is no claim for civil conspiracy in California.  BROSNAN agrees that there is no Civil

28  Cause of Action "per se", however BROSNAN'S claim is for Conspiracy to Commit Slander.  A

29  component of defendants' actions in conspiracy was to create a false version of what happened

30  in order to try to avoid responsibility for what happened.

31     26.    SFI coached AVILDSEN with the help of KASS to commit perjury.  Proof of this

32  is the perjured declaration of AVILDSEN [Exhibit 1] wherein AVILDSEN claims to live in

33  Beverly Hills yet SFI in an official form filed with the State of California Department of

1    Insurance claims that AVILDSEN lives in New York.

2         27.    Defendants claim they are immune from suits for defamation pursuant to

3    California Civil Code § 47, yet present no showing as to how.  Defendants might as well assert

4    immunity as foreign diplomats while they're at it.

5         28.    Defendants falsely state that the claim for punitive damages should be struck

6    because for some ethereal reason when in fact the claim for punitive damages is definitely called

7    for based on the California Civil Code § 3294.

8         29.    California Civil Code § 3294 states:

9              3294.  (a) In an action for the breach of an obligation not arising
10             from contract, where it is proven by clear and convincing evidence
               that the defendant has been guilty of oppression, fraud, or malice,
11             the plaintiff, in addition to the actual damages, may recover damages
               for the sake of example and by way of punishing the defendant.
12               (b) An employer shall not be liable for damages pursuant to
13             subdivision (a), based upon acts of an employee of the employer,
               unless the employer had advance knowledge of the unfitness of the
14             employee and employed him or her with a conscious disregard of the
               rights or safety of others or authorized or ratified the wrongful
15             conduct for which the damages are awarded or was personally guilty of
16             oppression, fraud, or malice.  With respect to a corporate employer,
               the advance knowledge and conscious disregard, authorization,
17             ratification or act of oppression, fraud, or malice must be on the
18             part of an officer, director, or managing agent of the corporation.
                 (c) As used in this section, the following definitions shall
19             apply:
20               (1) "Malice" means conduct which is intended by the defendant to
               cause injury to the plaintiff or despicable conduct which is carried
21             on by the defendant with a willful and conscious disregard of the
22             rights or safety of others.
                 (2) "Oppression" means despicable conduct that subjects a person
23             to cruel and unjust hardship in conscious disregard of that person's
24             rights.
                 (3) "Fraud" means an intentional misrepresentation, deceit, or
25             concealment of a material fact known to the defendant with the
26             intention on the part of the defendant of thereby depriving a person of property or
27             legal rights or otherwise causing injury.

28

29        30.    Defendants committed Malice, Oppression and Fraud when they conspired to lie

30   about BROSNAN and make up a false account of what happened in order to evade responsibility

31   for what happened in the ACCIDENT.

32

33

---

COMPLAINT

31.    SFI chose to violate BROSNAN'S rights pursuant to the California Fair Claims Settlement Regulations when SFI refused to answer questions posed by BROSNAN that SFI was legally bound to answer.

32.    DEFENDANTS conspired to deceive this Court with a perjured declaration signed by AVILDSEN.

## ANALYSIS

33.    This court has subject matter jurisdiction pursuant to diversity due to AVILDSEN living in New York.

34.    This court is the proper venue due to the fact that the majority of the damages being suffered by BROSNAN are occurring in its jurisdiction.

35.    BROSNAN'S causes of action should be allowed because they are proper.

36.    Punitive damages are called for due to the acts committed by defendants.

37.    SFI violated California's Fair Claims Settlement Regulations as they pertained to BROSNAN when BROSNAN requested answers to questions.

38.    SFI has not provided documentation showing it has a right to violate California's Fair Claims Settlement Regulations.

## CONCLUSION

39.    Defendants' motion should be denied in its entirety.


DATED: F 28, 2008

_____

John Brosnan

# EXHIBIT 1

# DECLARATION OF TRACY AVILDSEN

I, Tracy Avildsen, declare as follows:

1.    I am over the age of 18 and have personal knowledge of the facts stated in this declaration.  If called upon to do so I could and would testify as to the truth of the matters contained within this declaration.

2.    Presently and at the time of the May 12, 2007 automobile accident which is the subject of plaintiff's complaint in this matter, I am a resident of California.  I have been a resident of California since approximately 1987.

3.    I presently reside in the Beverly Hills, California area and resided in the same area at the time of the accident which is the subject of plaintiff's Complaint in this matter.

4.    I have not been served with a Summons and Complaint from the plaintiff.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this  4  day of April, 2008 in Beverly Hills, California.

_____
TRACY AVILDSEN

-1-

DECLARATION OF TRACY AVILDSEN

# EXHIBIT 2

**Suspected Fraudulent Claim (SFC)**
**Referral Form (FD-1)**
**eFD-1 On-line Suspected Fraud Form**

Submitted On-line by:

Sandra DePena

| CDI USE ONLY | | RCVD: 08-JUN-07 |
|---|---|---|
| Case #: 07CA010156 | County Code: 19 | SFC #: |

| [X] AUTOMOBILE | [ ] WORKERS' COMPENSATION | [ ] SPECIAL OPS |
| [ ] URBAN AUTO FRAUD PROGRAM | [ ] OTHER | [ ] HEALTHCARE |

**REPORTING REQUIREMENTS: Please print legibly or type.** California Insurance Code (CIC) section 1872.4 requires companies licensed to write insurance in California to submit this form **WITHIN 60 DAYS** after determining that a claim appears to be fraudulent. CIC section 1877.3 further requires reporting of suspected fraudulent Workers' Compensation claims to **BOTH** the CDI Fraud Division and the local District Attorney's Office **WITHIN 30 DAYS**.

## SECTION I.  REPORTING PARTY INFORMATION CODE

FRAUD TYPE CODE: 200    REPORTING PARTY CODE: 01    CHECK ONE: [X] NEW REFERRAL    [ ] AMENDED REFERRAL

REPORTING PARTY: State Farm Mutual Automobile Insurance Company    CA #: 0948-0    SI/TPA #:

ADDRESS: 300 CORPORATE POINTE    CITY: CULVER CITY    STATE: CA    ZIP: 90230

E-MAIL ADDRESS (IF APPLICABLE):

## SECTION II.  LOSS/INJURY INFORMATION

ALLEGED VICTIM: State Farm Mutual Automobile Insurance Company    CA #: 0948-0    SI/TPA #:

ADDRESS: 300 CORPORATE POINTE    CITY: CULVER CITY    STATE: CA    ZIP: 90230

CLAIM #: 75-4408-066    POLICY #: 1031-368-75    DATE OF LOSS/INJURY: 12-MAY-07

LOCATION WHERE LOSS/INJURY OCCURRED:

ADDRESS: LA CIENEGA    CITY: LOS ANGELES    STATE: CA    ZIP: 90048

PREMIUM LOSS:    POTENTIAL LOSS:    ACTUAL PAID TO DATE:    SUSPECTED FRAUD LOSS TO DATE:

## SECTION III.  SUSPECTED FRAUDULENT CLAIM ACTIVITY

SYNOPSIS: State the facts (who, what, when, where, how, why) that support your suspicion of fraudulent claim activity including any material misrepresentation(s). **Provide details regarding any prior history of fraudulent insurance claim activity by any of the parties. If known, include relevant claim numbers.**

THIS IS A DISPUTED ACCIDENT WHERE MR. BROSNAN CLAIMS HE WAS REAR-ENDED. OUR INSURED, TRACY AVILDSEN, CLAIMS MR. BROSNAN ROLLED BACK INTO HER VEHICLE. THIS IS A MINIMAL DAMAGE ACCIDENT WHERE MR. BROSNAN IS CLAIMING INJURIES AND CAMERA EQUIPMENT WHICH WAS DAMAGED TOTALLY 60K. OUR INSURED STATES THERE WAS NO CAMERA EQUIPMENT IN THE VEHICLE. MR. BROSNAN IS UNUSUALLY AGGRESSIVE AND PRESSURES FOR QUICK SETTLEMENT. HE IS VERY KNOWLEDGEABLE OF CLAIMS PROCESS AND INSURANCE TERMINOLOGY. MR. BROSNAN HAS AN EXTENSIVE HISTORY OF MAKING INSURANCE CLAIMS. MULTIPLE CLAIMS HAVE REFERRALS TO NICB.

You may include attachments documenting the suspected fraudulent activity. If a complete copy of the claim file has been submitted to the District Attorney's Office, please attach a complete copy to this form FD-1. Otherwise, a complete copy of your claim file is not required.

DISASTER CLAIMS: If this suspicious activity is related to a major natural or non-natural disaster, check the box below that best describes the related event:

[ ] EARTHQUAKE  [ ] FLOOD    [ ] FIRESTORM  [ ] WIND    [ ] OTHER NATURAL  [ ] NON-NATURAL (MAN-MADE)

## SECTION IV.  REPORTS TO OTHER AGENCIES

[ ] OTHER LAW ENFORCEMENT AGENCY (specify name):

[ ] DISTRICT ATTORNEY'S OFFICE (specify name):

[X] NICB    [ ] OTHER:

## SECTION V.  CONTACT INFORMATION

CONTACT (name/title): Sandra DePena/Claim Representative    PHONE: (310) 568-2932

FILE HANDLER (if different):    PHONE:    DATE FORM COMPLETED:

COMPLETED BY (if different): SANDRA DEPENA    PHONE: (310) 568-2932    08-JUN-07

Page 1 of 2

| Suspected Fraudulent Claim (SFC) Referral Form (FD-1) aFD-1 On-line Suspected Fraud Form | CDI USE ONLY | | | RCVD: 08-JUN-07 |
|---|---|---|---|---|
| | Case #: 07CA010156 | County Code: 19 | | SFC #: |

**Submitted On-line by:**
Sandra DePena

| | | | |
|---|---|---|---|
| [X] AUTOMOBILE | [ ] WORKERS' COMPENSATION | | [ ] SPECIAL OPS |
| [ ] URBAN AUTO FRAUD PROGRAM | [ ] OTHER | | [ ] HEALTHCARE |

---

**SECTION VI.   INSURED/EMPLOYER INFORMATION (Party A)**

PARTY A    [X] INSURED    [ ] EMPLOYER   (CHECK ONE/If Workers' Compensation, must show employer here.)

Name:    AVILDSEN, TRACY                                    Phone #:  (310) 937-8793

Address: 535 5TH AVE FL 21            City: NEW YOUR          State: NY    Zip: 10017

DOB/Age:                     SSN:                          Tax ID #:

DL #:              State:        License Plate #: 5DLP690    State: CA    VIN #: SALTW16413A795918

DBAs/Multiple Numbers/AKAs:                        Party Claiming Injury:  [ ] Yes [X] No

---

**SECTION VII.   OTHER PARTIES TO THE LOSS/INJURY (Additional Parties)**

PARTY B    [01] (Enter party code in box)

Name:    DROSNAN, JOHN                                    Phone #:  (510) 779-1006

Address: 2546 CLINTON AVE.            City: RICHMOND         State: CA    Zip: 94804

DOB/Age: 07-APR-64            SSN: 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              Tax ID #:

DL #: C0572589      State: CA    License Plate #: UNKNOWN    State:       VIN #: UNKNOWN

DBAs/Multiple Numbers/AKAs:                        Party Claiming Injury:  [X] Yes [ ] No

# EXHIBIT 3

McKee v. National Union Fire Ins. Co. (1993) 15 Cal.App.4th 282 , 19 Cal.Rptr.2d 286

[No. B062944. Second Dist., Div. One. Apr. 28, 1993.]

DWAYNE McKEE, Plaintiff and Respondent, v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Defendant and Appellant.

(Superior Court of Los Angeles County, No. LC004306, Stephen D. Petersen, Judge.)

(Opinion by Vogel (Miriam A.), J., with Aranda, J., fn. * concurring. Separate concurring and dissenting opinion by Spencer, P. J.)

COUNSEL

Schaffer & Lax, Stephen A. Lax and Elizabeth A. Moussouros for Defendant and Appellant.

Glickman & Glickman, David R. Glickman and Steven C. Glickman for Plaintiff and Respondent.

OPINION

VOGEL (Miriam A.), J.

The question in this case is whether a judgment creditor may sue a judgment debtor's insurance company under subdivision (b)(2) of section 11580 of the Insurance Code before an appeal from the judgment in the underlying action is resolved or the time within which to pursue an appeal has passed. Our answer is no.

Facts

In 1985, 14-year-old Dwayne McKee was shot and injured by 13-year-old Jeffrey Townsend while the boys were playing at the home where Jeffrey [15 Cal.App.4th 284] lived with his parents, David and Marilyn Townsend. The gun belonged to David Townsend and the house belonged to David Townsend's business, Anafuel Corporation of America. Anafuel and the Townsends were both insured by State Farm Fire & Casualty Company (there were two policies, each with liability limits of $100,000). In addition, Anafuel had a general liability policy issued by National Union Fire Insurance Company of Pittsburgh, with policy limits of $1 million.

Dwayne (through his parents as guardians ad litem) sued the Townsends and Anafuel (Super. Ct. L.A. County, 1985, No. NWC10436). Before trial, Dwayne offered to settle with State Farm and National Union for policy limits. National Union declined but State Farm accepted and paid $200,000 to Dwayne. As part of the settlement, Dwayne promised that, if he prevailed, he would not enforce his judgment against the Townsends or Anafuel, but would look solely to National Union for payment. The case was thereafter tried, with National Union providing a defense to Anafuel, subject to a reservation of rights. Dwayne prevailed and on June 14, 1990, a judgment was entered in his favor and against Anafuel in the amount of $8,496,841. Anafuel appealed from that judgment.

In early 1991, while Anafuel's appeal in the underlying case was still pending, Dwayne sued National Union, alleging a single cause of action under subdivision (b)(2) of section 11580 of the Insurance Code. fn. 1 Dwayne alleged that his efforts to collect from National Union had been unsuccessful and he prayed for Anafuel's policy limits of $1 million. National Union answered and alleged, among other affirmative defenses, that Dwayne's complaint was premature because his judgment against National Union's insured was not yet final.

At the trial of this action, the parties stipulated that National Union's policy was in effect at the time Dwayne was shot and that, except for the fact the judgment in the underlying action was not yet final, the judgment against Anafuel was otherwise within the coverage provided by National Union's policy. The trial court found this action was not premature and entered judgment in favor of Dwayne in the amount of $1 million. National Union appealed from the judgment entered in this case.

While this appeal was pending, we affirmed the judgment in the underlying case (McKee v. Anafuel Corporation of America (Sept. 30, 1992) [15 Cal.App.4th 285] B051463 [nonpub. opn.]) and the Supreme Court thereafter denied Anafuel's petition for review (McKee v. Anafuel Corporation of America (Jan. 27, 1993) S029703). Although Dwayne has suggested this appeal is now moot, we disagree and therefore address the merits of the issue raised by National Union.

Discussion

The only issue is whether this action was premature when filed and tried. For the following reasons, we hold that it was.

A.

Under subdivision (b)(2) of section 11580, every liability insurance policy issued in this state must include a "provision that whenever judgment is secured against the insured ... in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." In conformance with the statute, National Union's policy provides that "[n]o action shall lie against [National Union] ... until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and [National Union]." [1] As we will explain, the statute and the standard policy language permit an action against an insurer only when the underlying judgment is final and "final," for this purpose, means an appeal from the underlying judgment has been concluded or the time within which to appeal has passed.

B.

In Jennings v. Ward (1931) 114 Cal.App. 536 [300 P. 129], the plaintiff recovered a judgment for personal injuries against two insureds. While the insureds' appeal from that judgment was pending, the plaintiff attempted to execute against the insureds, without success. At a judgment debtor examination, the plaintiff learned about an insurance policy and, by motion filed in the personal injury action, asked the court to compel the insurer to satisfy the judgment. The policy contained language substantially similar to the provision in National Union's policy-"[n]o action shall lie against the company to recover

upon any claim or for any loss under this policy unless brought after the amount of such claim or loss shall have been fixed and rendered certain either by final judgment against the Assured after trial of the issue or by agreement between the parties ..."-and the trial court therefore denied the motion. (Id. at pp. 536-537.) [15 Cal.App.4th 286]

In affirming, the Court of Appeal explained it is "the settled rule in California ... that a judgment is not final so long as an appeal is pending therefrom, even though a ... bond has not been furnished. [Citations.] [¶] It follows that during the pendency of the appeal the amount of such claim or loss has not been fixed and rendered certain by final judgment as required by ... the policy so as to authorize an action thereon against the company." (Id. at p. 537.) In our view, the slight difference in the policy language in Jennings does not affect its application to this case-because (as we explain in pt. C, post) the basic rule is that, so long as an appeal is pending, a judgment is not final. fn. 2

Although Jennings v. Ward, supra, 114 Cal.App. 536, is the only case factually on all fours with this case, a number of courts have reached similar results in similar situations. For example:

-In Fireman's Fund Ins. Co. v. City of Turlock (1985) 170 Cal.App.3d 988, 1004 [216 Cal.Rptr. 796], the court held that an action under subdivision (b)(2) of section 11580 cannot be maintained "[u]ntil such time as a final judgment [is] entered" against the insured. (Italics added.)

-In Laguna Pub. Co. v. Employers Reinsurance Corp. (C.D. Cal. 1985) 617 F.Supp. 271, 272, an action against an insurer under subdivision (b)(2) of section 11580, the court held (with regard to a claimant whose judgment had been set aside) that under " 'the law of California ... a direct action against the insurer ... is not allowable until after the claimant shall have secured a final judgment against the insured.' " (Italics added.)

-In Mathews Cadillac, Inc. v. Phoenix of Hartford Ins. Co. (1979) 90 Cal.App.3d 393, 397 [153 Cal.Rptr. 267], an action against an insurer under section 11580, subdivision (b)(2), was dismissed because no judgment was ever entered against the insured, the court holding that "no liability accrues as an enforceable claim against the insurer until recovery of a final judgment against the [insured]." (Italics added.)

-In Zander v. Texaco, Inc. (1968) 259 Cal.App.2d 793, 807 [66 Cal.Rptr. 561], an action by a judgment creditor against an insurer, the court rejected [15 Cal.App.4th 287] the insurer's claim that the action was barred by limitations, explaining that the cause of action "did not arise until a final judgment against the insured had been entered." (Italics added.)

-In Tashire v. State Farm Fire and Casualty (9th Cir. 1966) 363 F.2d 7, 10 (revd. on a federal procedure issue, State Farm Fire & Cas. Co. v. Tashire (1967) 386 U.S. 523 [18 L.Ed.2d 270, 87 S.Ct. 1199]), an interpleader action filed by an insurer, the court held that, under California law, "a direct action against the insurer is not allowable until after the claimant shall have secured a final judgment against the insured." (Italics added.)

-In Chamberlin v. City of Los Angeles (1949) 92 Cal.App.2d 330, 332 [206 P.2d 661], a claimant's action against an insurer, the court held that "it is a condition precedent to any action against the insurer that a final judgment be obtained against the assured." (Italics added.)

-In Malmgren v. Southwestern Auto. Ins. Co. (1932) 126 Cal.App. 135, 139 [14 P.2d 351], an action against an insurer by the insured's judgment creditor, the court held that the cause of action against the carrier brought after the time to appeal from the underlying judgment had expired "arose as soon as the judgment [in the underlying action] became final." (Italics added.)

-In Levy v. Superior Court (1925) 74 Cal.App. 171, 175 [239 P. 1100], the court held that policy language virtually identical to National Union's policy means that a judgment creditor cannot maintain an action "against the insurer until the recovery of a final judgment against the insured ...." (Italics added.)

Without a doubt, a final judgment is required.

C.

And, without a doubt, "final" means after an appeal is concluded or the time within which to appeal has passed. (Woolett v. American Employers Ins. Co. (1978) 77 Cal.App.3d 619, 624 [143 Cal.Rptr. 799] [a cause of action under § 11580, subd. (b)(2), arises when a final judgment against the insured has been entered, which is when the time for appeal has passed]; see also 2 Cal. Liability Insurance Practice: Claims & Litigation (Cont.Ed.Bar 1992) § 27.10 [a judgment is final for purposes of an action under § 11580, subd. (b)(2), "when the time for appeal has expired or, if an appeal is taken, after the appeal has been determined"].)

Under section 1049 of the Code of Civil Procedure, "[a]n action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment [15 Cal.App.4th 288] is sooner satisfied." For this reason, the Supreme Court explained in Pacific Gas & Elec. Co. v. Nakano (1939) 12 Cal.2d 711, 714 [87 P.2d 700, 121 A.L.R. 417], a judgment does not become final so long as the action in which it was rendered is pending and an action is deemed pending until it is finally determined on appeal or until the time for appeal has passed. The determination of the issue in the case is held in abeyance until the appeal is finally decided by an appellate court and the appeal operates to " 'keep alive the case ... as it existed before the judgment was rendered.' " (Ibid.) Pending the appeal, therefore, the plaintiff has only a claim for damages for injuries suffered or a chose in action arising in tort, and such a claim is not assignable. (Ibid.) For the same reason, we hold that it cannot support an action against an insurer under section 11580, subdivision (b)(2).

Other cases reach the same result for different reasons. In Nationwide Ins. Co. v. Superior Court (1982) 128 Cal.App.3d 711 [180 Cal.Rptr. 464], disapproved on unrelated grounds in Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], the plaintiff was injured in an accident involving Nationwide's insured. The plaintiff sued the insured and won and the insured appealed. While that appeal was pending, the claimant sued Nationwide for violations of section 790.03 (as was then allowed under Royal Globe Ins. Co. v. Superior Court (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], overruled by Moradi-Shalal v. Fireman's Fund Ins. Companies, supra, 46 Cal.3d 287). Nationwide demurred, asserting the Royal Globe action was premature. The trial court overruled the demurrer but the Court of Appeal agreed with Nationwide and issued a writ of mandate

directing the trial court to dismiss the action because the underlying judgment was not final. (Nationwide Ins. Co. v. Superior Court, supra, 128 Cal.App.3d at p. 714.)

As the Nationwide court explained, "[w]hen a court speaks of a final determination of liability it has reference to a judgment that is final for res judicata purposes .... The reason is apparent: unless the determination of liability and the amount of damages were finally determined in the res judicata sense, the insurer would not be collaterally estopped by the judgment from relitigating in the third party action facts relating to the question of liability and damages." (Id. at p. 715.) fn. 3 A judgment is not "final" for res judicata purposes until the appeal is concluded or the time within which to [15 Cal.App.4th 289] appeal has passed. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 212, pp. 649-650, and cases cited.)

The res judicata analysis is equally persuasive in the section 11580 context. Unless the determination of the insured's liability has been finally determined on appeal, the insurer might not be collaterally estopped by the judgment in the underlying action from relitigating in the section 11580, subdivision (b)(2), action facts relating to the questions of liability and damages. (See Parra v. Traeger (1931) 214 Cal. 535, 538 [6 P.2d 941]; see also 2 Cal. Liability Insurance Practice: Claims & Litigation (Cont.Ed.Bar 1992) § 27.4.)

Of course, the possibility of a reversal of the underlying judgment must be considered. If the appeal from the judgment in the underlying action did not have to be concluded as a condition precedent to an action under section 11580, subdivision (b)(2), a final judgment against the carrier could be followed by a reversal of the underlying judgment. Then what? If the carrier has paid the judgment, does it get its money back? Is a third lawsuit required? Does the claimant get paid by the carrier notwithstanding an appellate court's ruling that, as a matter of law, the insured had no liability to the claimant? We think not. As we held in Williams v. Transport Indemnity Co. (1984) 157 Cal.App.3d 953, 960 [203 Cal.Rptr. 868], no enforceable claim accrues against an insurer unless and until the insured's liability is, in fact, established. (See also Marenger v. Hartford Accident & Indemnity Co. (1990) 219 Cal.App.3d 625, 631 [268 Cal.Rptr. 290] [a carrier's liability toward a third party is derivative in nature so that the insurer cannot be found liable toward third persons unless the insured itself is liable].)

D.

We reject Dwayne's suggestion that Anafuel's failure to post a bond to stay execution of the underlying judgment pending appeal permitted him to proceed with this action against National Union. A bond stays enforcement only against the judgment debtor and an action under section 11580, subdivision (b)(2), is not an enforcement action against the judgment debtor. It is a separate action against an insurance company, subject to different defenses, and the insurer is not a judgment debtor because it was not a party to the underlying action. (Code Civ. Proc., § 917.1, subd. (a) [the perfecting of an appeal does not stay enforcement of a money judgment payable by the appellant or another party to the action unless an undertaking is given]; Campbell v. Allstate Ins. Co. (1963) 60 Cal.2d 303, 305 [32 Cal.Rptr. 827, 384 P.2d 155]; Hall v. Travelers Ins. Companies (1971) 15 Cal.App.3d 304, [15 Cal.App.4th 290] 308 [93 Cal.Rptr. 159]; see also Parra v. Traeger, supra, 214 Cal. at p. 538; Rose v. Royal Ins. Co. (1991) 2 Cal.App.4th 709, 715, 718 [3 Cal.Rptr.2d 483] [under § 11580, subd. (b)(2), the claimant must bring two separate actions; the insurer is not a party to the underlying action and there is no authority for its appearance in that action]; Zahn v. Canadian Indem. Co. (1976) 57 Cal.App.3d 509, 514 [129

Cal.Rptr. 286] [an insured's liability must be established independently and the insurer may not be joined in the action against the insured].)

As it happens, no bond was posted in this case because Dwayne, as part of his settlement with State Farm, had agreed not to execute against Anafuel. But even without that agreement, the only party which would have been affected by the absence of a bond would have been Anafuel-it was the only judgment debtor against whom enforcement could have been sought. (See Jennings v. Ward, supra, 114 Cal.App. at p. 537 [a judgment is not final so long as an appeal is pending even though a bond has not been furnished]; see also Code Civ. Proc., § 699.720, subd. (a)(3) [a "cause of action that is the subject of a pending action" is not subject to execution] and Code Civ. Proc., § 1049 [an action is deemed "pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed"].) fn. 4

E.

This leaves only the question about what to do with this case in light of the fact that the judgment in the underlying action is now final. Since the sole issue disputed below was prematurity, and since that was the sole issue on appeal, it follows ineluctably that reversal at this stage-when this action is no longer premature-would accomplish absolutely nothing. Since we try to avoid absurd results, we affirm. (See Grant v. Sun Indemnity Co., supra, 11 Cal.2d 438.)

Disposition

The judgment is affirmed. The parties are to bear their owns costs of appeal.

Aranda, J., fn. * concurred. [15 Cal.App.4th 291]

SPENCER, P. J.,

Concurring and Dissenting.-I concur in the affirmance of the judgment. However, I respectfully dissent from the majority's reasoning and would affirm on a different basis.

Insurance Code section 11580, subdivision (b)(2) (hereinafter section 11580(b)(2)), provides a liability insurance policy may not be issued unless it contains "[a] provision that whenever judgment is secured against the insured ... in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Defendant argues "judgment," as used in the section, means a final judgment, one upheld after any appeals in the case, rather than a judgment entered by the trial court but subject to any pending appeals.

In the construction of statutes, the primary goal of the court is to ascertain and give effect to the intent of the Legislature. (Code Civ. Proc., § 1859; Kimmel v. Goland (1990) 51 Cal.3d 202, 208 [271 Cal.Rptr. 191, 793 P.2d 524].) The court looks first to the language of the statute; if clear and unambiguous, the court will give effect to its plain meaning. (51 Cal.3d at pp. 208-209; see also Rojo v. Kliger (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].) Additionally, in construing a statute the role of the court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert

what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." (Code Civ. Proc., § 1858; see People v. White (1954) 122 Cal.App.2d 551, 554 [265 P.2d 115].)

Where the court must construe the statute, it " 'turns first to the words themselves for the answer.' [Citation.]" (Moyer v. Workmen's Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) The words used should be given their usual, ordinary meanings and, if possible, each word and phrase should be given significance. (Ibid.) The words used "must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible." (California Mfrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) Thus, where a word or phrase has been given a particular meaning in one part of the law, it should be given the same meaning in other parts of the law. (Stillwell v. State Bar (1946) 29 Cal.2d 119, 123 [173 P.2d [15 Cal.App.4th 292] 313]; City of Sacramento v. State of California (1984) 156 Cal.App.3d 182, 197 [203 Cal.Rptr. 258].)

This court previously construed the word "judgment" as used in Code of Civil Procedure section 877. In Southern Cal. White Trucks v. Teresinski (1987) 190 Cal.App.3d 1393, 1405 [236 Cal.Rptr. 159], this court stated: "While 'judgment' is defined by [Code of Civil Procedure] section 577 as 'the final determination of the rights of the parties in an action or proceeding,' the term is 'meaningless unless qualified by context, i.e., a judgment may be final, but modifiable at the trial level, or final for the purpose of appeal.' [Citation.] The finality of the judgment is determined by the circumstances present at the time it is entered; it is not determined on the basis of hindsight after further proceedings have established it did or did not provide the proper relief to the parties. [Citation.] Thus, the judgment of the trial court is a 'judgment' within the meaning of section 577 [citation]; the possibility of further challenge does not render it any less a 'judgment.' "

A like construction of "judgment" in section 11580(b)(2) to mean trial court judgment would be both internally consistent and consistent with other parts of the law. (Stillwell v. State Bar, supra, 29 Cal.2d at p. 123; City of Sacramento v. State of California, supra, 156 Cal.App.3d at p. 197.) Section 11580(b)(2) provides "that whenever judgment is secured ..., then an action may be brought against the insurer on the policy ... by such judgment creditor to recover on the judgment." There is no provision for delaying the action pending appeal of the judgment.

Similarly, pursuant to the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq.), a " '[j]udgment' means a judgment ... entered in a court of this state." (Id., § 680.230.) A " '[j]udgment creditor' means the person in whose favor a judgment is rendered or, if there is an assignee of record, means the assignee of record." (Id., § 680.240.) "Except as otherwise provided by statute or in the judgment, a judgment is enforceable ... upon entry." (Id., § 683.010.) The Code of Civil Procedure further provides a money judgment entered by the trial court is enforceable even if an appeal is pending, "unless an undertaking is given." (Id., § 917.1, subd. (a).)

Thus, the general law is that a judgment entered in the trial court is enforceable upon its entry by the judgment creditor, although enforcement may be stayed by the giving of an undertaking. If "judgment" in section 11580(b)(2) is construed to mean a judgment in the trial court, the section provides, consistent with the general law, the judgment is enforceable upon its entry.

Defendant relies on several cases to support its claim "judgment" as used in section 11580(b)(2) means a final judgment following any appeals. The [15 Cal.App.4th 293] majority also cites these cases to support this proposition. In my view, all are inapposite.

Defendant quotes Mathews Cadillac, Inc. v. Phoenix of Hartford Ins. Co. (1979) 90 Cal.App.3d 393, 397 [153 Cal.Rptr. 267] for the proposition: "Where the terms of the indemnity contract, or law of the state, require a judgment against the bankrupt (indemnitee) before direct action against the insurer, no liability accrues as an enforceable claim against the insurer until recovery of a final judgment against the bankrupt. [Citations.]" In Mathews, dismissal of the action against defendant insurer was upheld, but not because an appeal was pending against the bankrupt insured. It was upheld because no judgment was ever entered against the insured. (Id. at pp. 395, 399.)

Defendant also quotes Fireman's Fund Ins. Co. v. City of Turlock (1985) 170 Cal.App.3d 988, 1004 [216 Cal.Rptr. 796], which states: "Until such time as a final judgment was entered in favor of City and against Watson, no cause of action could be maintained by City against [the insurer] on the policy [pursuant to section 11580(b)(2)]. [Citations.] Here, City is attempting to reach Watson's insurance policy without having first secured a final judgment against Watson. That it cannot do." As in Mathews, no judgment, in fact, had been entered against the insured, Watson; "[i]ndeed, the record fails to indicate that City has even made a claim against Watson ...." (Ibid.)

Laguna Pub. Co. v. Employers Reinsurance Corp. (D.C.Cal. 1985) 617 F.Supp. 271 similarly uses the term "final judgment," but in that case, too, there was no judgment at all entered against the insured, in that it had been set aside. (At p. 272.) Chamberlin v. City of Los Angeles (1949) 92 Cal.App.2d 330 [206 P.2d 661] also uses the term "final judgment" but involves an action brought against the insured and insurer simultaneously; having not first obtained a judgment against the insured, plaintiff could not maintain an action against the insurer. (At pp. 3332-333.)

In Malmgren v. Southwestern Auto. Ins. Co. (1932) 126 Cal.App. 135 [14 P.2d 351], the court noted plaintiff's "right of action, if any, against [the insurer] for the principal sum of the judgment and costs arose as soon as the judgment became final." (At p. 139.) It also noted no appeal was taken from the judgment against the insured, and the judgment thereafter became final. (Id. at p. 138.) The case did not discuss the effect an appeal would have had on plaintiff's ability to bring an action against the insurer.

In short, none of the foregoing cases cited by defendant and the majority opinion holds or supports the proposition that an action pursuant to section [15 Cal.App.4th 294] 11580(b)(2) may not be brought until a trial court judgment has been made final by the resolution of any appeals taken therefrom. In these cases, there was no judgment at all, or a judgment and no appeal, not a judgment which was the subject of a pending appeal.

The majority also relies on Woolett v. American Employers Ins. Co. (1978) 77 Cal.App.3d 619 [143 Cal.Rptr. 799] and 2 California Liability Insurance Practice (Cont.Ed.Bar 1992) section 27.10 for the proposition section 11580(b)(2) requires a "final" judgment, one which has been made final by the determination of an appeal or the expiration of the time in which an appeal may be taken. Woolett simply held a cause of action under section 11580(b)(2) accrued after the time in which the underlying judgment could have been-but was not-appealed from expired. (77 Cal.App.3d at p. 624.) It did not discuss the effect of a pending appeal on the accrual of a cause of action under section 11580(b)(2). In

reaching this holding, Woolett reiterated the familiar principle that a cause of action under section 11580(b)(2) does not accrue until a "final judgment" has been entered against the insured in the underlying action. (Ibid.) In this it relied on Zander v. Texaco, Inc. (1968) 259 Cal.App.2d 793, 807 [66 Cal.Rptr. 561], which stated the same principle but, again, did not involve an appeal from the underlying judgment or address the question whether an action under section 11580(b)(2) could be brought while such an appeal was pending. 2 California Liability Insurance Practice relies on Woolett and Zander to support its conclusion a section 11580(b)(2) action cannot be brought until an appeal from the underlying action is concluded, but they do not support this conclusion.

The majority also cites Code of Civil Procedure section 1049, which provides "[a]n action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." That an action may be pending on appeal, however, does not mean the judgment cannot be enforced. As previously mentioned, Code of Civil Procedure section 683.010 provides a judgment is enforceable upon entry and section 917.1, subdivision (a), provides it is enforceable upon entry, even if an appeal is pending, unless an undertaking is given. Thus, Code of Civil Procedure section 1049 provides no support for the majority's cause.

Caminetti v. Guaranty Union Life Ins. Co. (1943) 22 Cal.2d 759, 766 [141 P.2d 423] notes that "appeals do not automatically stay enforcement of [an] order. But they do suspend the force of the order as a conclusive determination of the rights of the parties. [Citation.] This is so, since finality is not accorded a judgment until affirmance in the event of an appeal." However, as noted in Southern Cal. White Trucks v. Teresinski, supra, 190 Cal.App.3d [15 Cal.App.4th 295] at page 1405, finality is a fluid concept. A judgment may be final for purposes of appeal, yet not final in the sense of a "conclusive determination of the rights of the parties" (Caminetti, supra, at p. 766), until the appeal has been resolved. In any event, as Caminetti notes, a judgment which has been appealed nonetheless may be enforced; section 11580(b)(2) deals with enforcement of a judgment.

In Caminetti, the question was whether the reviewing court could grant a writ of supersedeas to stay the force and effect of a trial court order approving a rehabilitation and reinsurance agreement relating to several insurance companies which had been seized by the insurance commissioner. (Caminetti v. Guaranty Union Life Ins. Co., supra, 22 Cal.2d at p. 763.) The court noted the order was self-executing, requiring no court process to give it effect. (Ibid.) Since a writ of supersedeas acts only on trial court proceedings to enforce a judgment, rather than on the parties, it could not be issued to prevent the insurance commissioner from acting on the order. (Id. at pp. 763, 766.) Thus, the appeal from the order did not prevent its enforcement, and Caminetti does not support a conclusion enforcement must wait until the appeal has been resolved.

In Jennings v. Ward (1931) 114 Cal.App. 536 [300 P. 129], on which the majority relies, the court held an action against the insurer could not be brought during the pendency of an appeal from the underlying judgment but had to be brought after a "final judgment" following appeal. (At p. 537.) However, Jennings was based on the language of the particular insurance policy, not on the later- enacted section 11580(b)(2). (114 Cal.App. at p. 538.) That policy provided an action could not be brought against the insurer " 'unless brought after the amount of such claim or loss shall have been fixed and rendered certain ... by final judgment against the Assured ....' " (Id. at p. 537.) The court's reasoning was that,

since a judgment is not final while an appeal is pending, the amount of the claim or loss could not be fixed and rendered certain by final judgment until after the appeal was decided. (Ibid.)

As previously discussed, while a trial court judgment is not final for all purposes while an appeal is pending, as a general rule it is final for enforcement purposes. The amount of liability is fixed and certain when the judgment is entered, although it is subject to further challenge. (Southern Cal. White Trucks v. Teresinski, supra, 190 Cal.App.3d at p. 1405.) Had the Legislature when it enacted section 11580(b)(2) wanted to provide, as in Jennings, that an action could not be brought under the section until the judgment was final for all purposes following the resolution of any appeal, it could have done so. It must be presumed the Legislature was aware of Jennings when it enacted section 11580(b)(2) and, had it wanted the section [15 Cal.App.4th 296] to have the same effect as Jennings, would have used similar language in the section. (Bailey v. Superior Court (1977) 19 Cal.3d 970, 977-978, fn. 10 [140 Cal.Rptr. 669, 568 P.2d 394].) This court should not insert such a provision if the Legislature did not see fit to do so. (Code Civ. Proc., § 1858.)

I am not unaware of the possibility noted by the majority that an underlying judgment may be reversed after an insurer has paid the judgment pursuant to a section 11580(b)(2) lawsuit, requiring the insurer to attempt to get its money back from the claimant. But this possibility exists in any case in which the winning party executes on a judgment while an appeal is pending where there is no stay of execution. In any event, the Legislature apparently has determined the right of injured claimants to collect their money upon receiving judgments in their favor rather than waiting until all appeals have been exhausted outweighs the inconvenience insurers may face if the judgments later should be reversed. We are bound to interpret section 11580(b)(2) according to the intent of the Legislature as expressed in the statute. (Code Civ. Proc., §§ 1858, 1859; Kimmel v. Goland, supra, 51 Cal.3d at p. 208.)

Again as the majority notes, this court has stated that, inasmuch as an insurance contract is by nature an indemnity contract, "no enforceable claim accrues against the insurer until the insured's liability is ... established." (Williams v. Transport Indemnity Co. (1984) 157 Cal.App.3d 953, 960 [203 Cal.Rptr. 868].) This statement was made in connection with the determination as to when a new cause of action against an insurer for bad faith under Insurance Code section 790.03 accrued. The accrual of the new cause of action required a final determination of liability on the part of the insured in the underlying action which could be given res judicata effect in the new lawsuit, so the insurer would be collaterally estopped to relitigate the issue. (Nationwide Ins. Co. v. Superior Court (1982) 128 Cal.App.3d 711, 715 [180 Cal.Rptr. 464].) This, in turn, required a judgment made final for res judicata purposes by the conclusion of any appeals. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 212, pp. 649-650.)

An action brought under section 11580(b)(2) is for the enforcement of the underlying judgment; it does not involve the accrual of a separate cause of action. Res judicata is not an issue; the insurer is not permitted to relitigate the issue of the insured's liability to the claimant. The insurer's only defenses are those it has against the insured. (See, e.g., Billington v. Inter-insurance Exchange (1969) 71 Cal.2d 728, 736-738 [79 Cal.Rptr. 326, 456 P.2d 982]; see also Clemmer v. Hartford Insurance Co. (1978) 22 Cal.3d 865, 876 [151 Cal.Rptr. 285, 587 P.2d 1098].) Therefore, the principles enunciated in Williams and Nationwide are inapplicable here; an action under [15 Cal.App.4th 297] section 11580(b)(2) is entirely different from one under Insurance Code section 790.03.

For the reasons stated, I would hold an action under section 11580(b)(2) may be brought once a judgment has been entered and become final in the trial court, without reference to whether an appeal is pending. Accordingly, this action was not prematurely filed and tried. (Southern Cal. White Trucks v. Teresinski, supra, 190 Cal.App.3d at p. 1405; cf. Code Civ. Proc., § 683.010.)

−FN *. Judge of the Municipal Court for the South Bay Judicial District sitting under assignment by the Chairperson of the Judicial Council.

−FN 1. Unless otherwise stated, all section references are to the Insurance Code.

As more fully explained below, subdivision (b)(2) of section 11580 provides that every insurance policy issued in this state must permit a direct action against the carrier by a claimant who has secured a judgment against the insured in a personal injury, property damage or wrongful death action.

−FN 2. In Grant v. Sun Indemnity Co. (1938) 11 Cal.2d 438 [80 P.2d 996], the plaintiff sued the defendant for damages for bodily injuries and recovered a judgment. While the defendant's appeal from that judgment was pending, the plaintiff filed suit against the defendant's insurer. While the action against the insurer was pending, the judgment in the underlying case was affirmed and the pleadings in the action against the insurer were amended to reflect that fact. Judgment was then rendered against the insurer. On the insurer's appeal, the Supreme Court approved the holding in Jennings v. Ward, supra, 114 Cal.App. 536, but held the amendment was proper for reasons having nothing to do with the validity of the rule now before us. (Grant v. Sun Indemnity Co., supra, 11 Cal.2d at pp. 440-441; see also Giordano v. American Fidel. & Cas. Co. (1950) 97 Cal.App.2d 309, 314 [217 P.2d 444].)

−FN 3. In Brown v. Guarantee Ins. Co. (1957) 155 Cal.App.2d 679, 690 [319 P.2d 69, 66 A.L.R.2d 1202], in answer in an argument that payment of an excess judgment by the insured was a prerequisite to the insured's first party bad faith action against his insurer, the court explained that logic and reason support the contrary view, "that the insured's cause of action arises when he incurs a binding judgment in excess of the policy limit." (Italics added.) In Taylor v. State Farm Fire & Casualty Co. (1985) 172 Cal.App.3d 557, 560 [218 Cal.Rptr. 403], another first party action under section 790.03, we held that an action against a carrier could not be pursued while an appeal from the judgment in the underlying action was pending. See also Caminetti v. Guaranty Union Life Ins. Co. (1943) 22 Cal.2d 759, 766 [141 P.2d 423] ["finality is not accorded a judgment until affirmance in the event of an appeal"].)

−FN 4. After we filed our opinion in the underlying case, National Union filed a supplemental brief in this case raising a new issue about coverage. We summarily reject that claim of error because this case was submitted to the trial court on stipulated facts, one of which was that coverage within policy limits was not disputed. All coverage issues have therefore been waived.

−FN *. Judge of the Municipal Court for the South Bay Judicial District sitting under assignment by the Chairperson of the Judicial Council.