John Brosnan
3321 Vincent Road
Pleasant Hill, CA 94523
510.779.1006 : Tel
925.237.8300 : Fax

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN BROSNAN, | CASE NUMBER : CV 07-6438 EDL |
| Plaintiff, | JOHN BROSNAN'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO |
| v. | DEFENDANTS' MOTION TO DISMISS COMPLAINT AND TO STRIKE PUNITIVE DAMAGES |
| TRACY AVILDSEN aka TRACY BROOKS SWOPE, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY INCORPORATED AND DOES 1 - 233, | DATE:        MAY 27, 2008 TIME:        9:00 AM ROOM:      E |
| Defendants. | |

## INTRODUCTION

1.      This action stems from a simple rear-ending accident ("ACCIDENT") caused by Tracy Avildsen ("AVILDSEN") when she struck the rear of a vehicle driven by John Brosnan ("BROSNAN") with her own vehicle.  Several people witnessed the ACCIDENT.  When BROSNAN contacted AVILDSEN at the ACCIDENT she refused to provide her insurance information card or vehicle registration information as required by California Law.  AVILDSEN informed BROSNAN that State Farm Insurance ("SFI") was her insurer.  When BROSNAN informed AVILDSEN that he was contacting the Los Angeles Police Department ("LAPD") due to her refusal to provide her insurance card or registration information she ran back to her vehicle and drove off.  When BROSNAN contacted AVILDSEN'S claimed insurance company SFI, BROSNAN was told that AVILDSEN was not insured with SFI.  At a later date, BROSNAN was informed that SFI was handling liability for the claim.  BROSNAN believes that AVILDSEN was added to the SFI policy subsequent to the ACCIDENT.

# FACTS

2.    The accident, which led to this action being filed, was witnessed by multiple people other than BROSNAN.  The information regarding those witnesses was provided to SFI. SFI chose to not talk to the witnesses because then they would be forced to compensate BROSNAN for his injuries he suffered.

3.    The amount in controversy is more than $75,000.

4.    BROSNAN resides in Nevada.

**5.**    Multiple lawyers have told BROSNAN that a person situated such as BROSNAN can't name the insurance company of an individual who causes an accident even if the insurance company is to blame for a portion of my injuries.  BROSNAN has been told that due to the case of, Moradi-Shalal v. Fireman's Fund, 46 Cal.3d 287 (1988) which held that Insurance Code Section 790.03(h) created no private cause of action and thus overruled Royal Globe v. Superior Court, 23 Cal.3d 880 (1979), that insurance companies are immune from being named in a suit for their failure to deal in good faith.  As a result of this insurance companies have figured out that it's cheaper to wrongfully deny a legitimate claim than to pay for the damage caused.

6.    The following happened to Minnie Kaplan, from South Beach, FL.: She was involved in a car accident a few years ago. The police and insurance investigators found the driver of the vehicle that hit her completely liable, yet she is still waiting to be compensated for her medical bills.

Kaplan was rear ended at a stop light - twice. Not only was the rear end of her car damaged, the second "bump" caused her car to hit the vehicle in front of her.  All told, the damage amounted to more than $2,000 and Kaplan sustained injuries to her back and fractured her foot. She immediately notified the police and her insurance company. Someone from the accident division of the police department came to the scene of the accident and determined that the woman behind Kaplan was 100 percent at fault.

"I went to work that day and the pain in my foot worsened," Kaplan says. "Finally I went to a podiatrist and found out the metatarsals in my foot were broken and I needed a cast." "My Farmers auto policy clearly states that it covers all medical bills if the other driver is found at fault, but now Farmers says the other woman's insurance is supposed to cover me, but her insurance company says that Farmers is supposed to cover me," says Kaplan.

In other words, she is getting the run-around. And her medical bills have yet to be covered.

7.    The following is from an October 1, 2007 article from CNN.COM:

SEATTLE, Washington (CNN) -- Across the country, insurance companies, trial lawyers and legislators are closely watching a November referendum in the state of Washington that could change how insurers are required to treat their customers.

Insurance companies are using the referendum process to try to strike down a new law in Washington state.

Insurance giants like Allstate, State Farm, Safeco and Farmers have poured more than $8 million into the referendum battle. Their goal is to convince voters to reject a law passed earlier this year that could force insurers to pay up to triple damages and lawyer fees if they fail to pay a legitimate claim and then lose in court. A "yes" vote on the referendum allows the law to go into effect while a "no" vote strikes the law down.

Supporters of the law say it forces insurance companies to pay legitimate claims in a timely and fair fashion and frees the courts from relatively minor cases that clog the system for months and even years. One supporter, the Washington Trial Lawyers Association, has raised almost $900,000 to fight the insurance industry over the referendum.

"Insurance companies have figured out that they can make more money if they don't pay your claim," said Washington state Rep. Steve Kirby.

Kirby and his fellow Washington state lawmakers heard so many complaints from policy holders who believed insurers weren't treating them fairly that earlier this year they passed a law called "The Fair Conduct Act." Hearings were held, the bill was revised -- even watered down, according to Kirby -- and both the House and Senate passed it. The governor readily signed it.

But the very next day a coalition, funded primarily by insurance companies, moved in to stop the law from going into effect by filing petitions for a voter referendum on the law.

Representatives of the insurance industry say the law will raise premiums and that the system is working fine as it is. The law, they said, will only make things worse, and they want voters to have the final say.

"The insurance companies stepped in and said, 'Consumers, you get to decide if you want to do this,' " said Dana Childers, executive director of the Liability Reform Coalition, which is leading the insurance company charge to defeat the new law.

Childers said the state's own insurance commissioner sees no need for the law.

"His own information that he provided to the legislature and the public says that this law simply isn't necessary," Childers said.

1
2        But that's not what Insurance Commissioner Mike Kreidler told CNN in a recent
interview in Seattle. Kreidler said he strongly supports the new law and that if insurance
3   companies act responsibly they have nothing to fear.

4        "If companies act in good faith, [they are] not going to have a problem," Kreidler said.
5   "It's not going to cost any more money. There's not going to be any legal action. There's going to
be no treble damages, because if companies deal with their customers in good faith there's no
6   penalty."

7        The campaign to woo voters has already begun. The insurance industry-backed group is
8   already running television commercials depicting greedy lawyers planning to sue and warning
consumers that the law will lead to frivolous lawsuits and higher rates.
9
10        It's not a new tactic by the insurance companies. Earlier this year, CNN exposed a
controversial insurance industry strategy that began in the mid-1990s.
11
12        Former insiders say insurance companies began limiting or denying legitimate claims in
minor injury cases and reaped billions in profits as a result. The strategy has tied up courts across
13   the country -- over minor claims, judges told CNN -- for months and even years. How did they
do it?
14
15        "It really came down to basically three elements: a position of delay, a position of
16   denying a claim and ultimately defending that claim that you're denied," said Jim Mathis, a
former insurance industry insider.
17
18        But Robert Hartwig, with the industry-backed Insurance Institute, said the strategy was
19   not intended to deny valid claims but to attack fraud, which, he claimed earlier this year, was
rampant in minor accident cases.
20
21        "What insurers are doing is trying to monitor costs. And every insurance company is
under the same pressure to do it," Hartwig said.
22
23        Washington state resident Michelle Tribble plans to vote for the law because she says she
has experienced the strategy first-hand. She says her two accidents convinced her insurance
24   companies don't want to play fair.
25
26        Tribble was working for an insurance company when she got rear-ended on the freeway.
Ten weeks later she got hit again, this time by an uninsured motorist. The two accidents, she
27   said, resulted in back injuries that required medical treatment. The first company agreed to pay
but her own insurer, Allstate, refused to pay even though she had coverage.
28
29        "I just wanted my medical bills paid because I didn't want my credit being hurt," Tribble
said, adding that the total came to about $18,000.
30
31        She said Allstate dug into her medical past.
32
        "They brought out stacks of medical records, you know, to see if I was at all deceptive."
33

---

REPLY

An arbitrator sided with Tribble, but Allstate refused to pay. The case went to court, where a jury, too, ruled for Tribble. But Allstate appealed again. Finally, four years after the accident, the company paid her claim.

Allstate said it could not comment on individual claims but said cases like Tribble's prove "that the current judicial system is working."

8.      Insurance companies like SFI and others have been running rampant with denying legitimate claims since Moradi-Shalal v. Fireman's Fund took away the ability of individuals to go after unscrupulous insurance companies.  They've figured out it's cheaper to deny legitimate claims than to pay out on them.

9.      If you take 100 accidents with an average value of $10,000 and add them up you get a total of $1,000,000.  The insurance industry then denies them all.  Then maybe 5 of those wrongfully denied claimants file suit and get a judgment for $20,000, the insurance industry only pays out $100,000 on $1,000,000 in claims.  That makes the insurance industry very happy.

10.     SFI has multiple instances of justified complaints against them which are documented on the California Department of Insurance website.

11.     SFI is fully aware of Moradi-Shalal v. Fireman's Fund yet did not raise that defense because they are fully aware that it does not exempt them from complying with California law as embodied with the Fair Claims Settlement Practices Regulations.

12.     AVILDSEN states under perjury that she lives in Beverly Hills.  What she does not state under penalty of perjury are the facts about the accident.  As both AVILDSEN and SFI know from the initial complaint is that there are several witnesses to the accident.  Why has AVILDSEN refused to state under penalty of perjury what happened in the accident?  The answer is quite simple; she would be guilty of perjury.

13.     The daughter of AVILDSEN was in the car with AVILDSEN at the time of the accident.  Why has her daughter not provided a statement under penalty of perjury?

14.     AVILDSEN claims that her First Amendment rights are being chilled by BROSNAN'S defamation claims.  This is absurd on it's face.  All AVILDSEN has to do is tell the truth if she wants to resolve this matter.

15.     As to the issue of BROSNAN being a Vexatious Litigant in California it has no bearing.  But if the court would want BROSNAN to explain the circumstances surrounding him becoming a Vexatious Litigant BROSNAN would be happy to satisfy the court.

16.     AVILDSEN is claiming that BROSNAN rolled back into her car at a stoplight causing damage to her vehicle yet SFI never contacted BROSNAN'S insurance carrier to get

reimbursed for the cost of the repairs.  This process is known as subrogation and what is always done in accidents yet in this accident SFI did not engage in subrogation because SFI did not want the facts to cloud their illegal acts.

## ANALYSIS

17.     This court has subject matter jurisdiction pursuant to diversity due to BROSNAN living in Nevada.

18.     This court is the proper venue due to the fact that the majority of the damages being suffered by BROSNAN are occurring in its jurisdiction.

19.     BROSNAN'S causes of action should be allowed because they are proper.

20.     Punitive damages are called for due to the acts committed by defendants.

21.     SFI violated California's Fair Claims Settlement Regulations as they pertained to BROSNAN when BROSNAN requested answers to questions.

22.     SFI has not provided documentation showing it has a right to violate California's Fair Claims Settlement Regulations.

## CONCLUSION

23.     Defendants' motion should be denied in its entirety.

DATED: May 14, 2008

_____

John Brosnan

John Brosnan
3321 Vincent Road
Pleasant Hill, CA 94523
510.779.1006 : Tel
925.237.8300 : Fax

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN BROSNAN,

      Plaintiff,

v.

TRACY AVILDSEN aka TRACY BROOKS
SWOPE, STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY
INCORPORATED
AND DOES 1 - 233,

      Defendants.

CASE NUMBER : CV 07-6438 EDL

DECLARATION OF JOHN BROSNAN

DATE:     MAY 27, 2008
TIME:     9:00 AM
ROOM:   E

I, John Brosnan, am a party to this action and declare as follows:

    1.     I currently reside near Jean, Nevada.  My business exists primarily in the San Francisco bay area.  Tracy Avildsen struck the rear of my vehicle with hers.  Several people witnessed the accident.  I provided the witness information to State Farm Insurance.  But I don't believe State Farm contacted any of the witnesses.  Tracy Avildsen refused to provide me with her insurance information at the scene of the accident, when I informed her I was calling the police she jumped in her car and drove off.

    2.     The amount in controversy is more than $75,000.

    3.     I'm willing to submit to a polygraph test regarding the accident.

I declare under penalty of perjury under the laws of the state  of California that the foregoing is true and correct.

May 14, 2008   _____

                John Brosnan